**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHELLE HOGAN, DAVID HOGAN, KAY CARTWRIGHT, and WILLIAM CARTWRIGHT, on Behalf of Themselves and Others Similarly Situated,

    Plaintiffs,

    v.

PMI MORTGAGE INSURANCE CO.,

    Defendant.
_____/

No. C 05-3851 PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Defendants' motion to dismiss claims one, three, five, six, seven and eight of the amended complaint came on for hearing before this court on April 26, 2006. Plaintiffs appeared by their counsel Tamra Cursten Givens, Stephen L. Meagher, and Kathleen Clark Knight, and defendant appeared by its counsel Stuart C. Plunkett. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion to dismiss claims five, six, seven and eight, and DENIES the motion to dismiss claims one and three.

**INTRODUCTION**

This is a proposed class action alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). Plaintiffs Michelle Hogan, David Hogan, Kay Cartwright, and William Cartwright (collectively "plaintiffs") filed this action on September 23, 2005, against defendant PMI Mortgage Insurance Company ("PMI"). Plaintiffs filed the amended complaint ("AC") on January 4, 2006.

In the AC, plaintiffs assert four causes of action alleging violations of three provisions of the FCRA (claims one, two, three, and four); two causes of action for declaratory relief, seeking declarations that PMI is obligated to provide notice of adverse action to consumers and that PMI's use of consumer report information violated the FCRA (claims five and seven); two causes of action for injunctive relief, seeking orders prohibiting PMI from violating the FCRA (claims six and eight); and one cause of action under state law alleging violation of California's Consumer Credit Reporting Agencies Act ("CCRAA") (claim nine). See California Civil Code §§ 1785.25(a)-(c). PMI now moves to dismiss certain claims from the AC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, as follows: 1) claims one, three, five and six on the basis that the FCRA no longer provides a private right of action for these claims; and, 2) claims five, six, seven and eight because declaratory and injunctive relief is not available for private litigants under the FCRA.

**BACKGROUND**

Plaintiffs Michelle and David Hogan, and Kay and William Cartwright are two couples who used residential loans to finance the purchase of their new homes in Texas and Georgia, respectively. As part of their loan transactions, plaintiffs allege they were required to pay premiums for mortgage insurance. Mortgage insurance covers the mortgage lender against losses due to borrower default when the loan collateral is not sufficient to make the lender whole. Plaintiffs' mortgage lenders obtained mortgage insurance on plaintiffs' loans from defendant PMI.

Plaintiffs assert violations of three sections of the FCRA – 15 U.S.C. § 1681b, § 1681m, and § 1681q – and one section of the CCRAA – Cal. Civ. Code § 1785 (subsections § 1785.19 and § 1785.31) – both in their individual capacities and as proposed representatives of a putative class of similarly situated individuals against whom PMI allegedly took adverse action, without providing notice, based on information contained in consumer reports.

First, plaintiffs allege that PMI used information contained in plaintiffs' consumer

2

reports to determine the rate of their mortgage insurance premiums, that PMI took adverse action against plaintiffs by charging them a rate that was higher than PMI's best premium, and that PMI failed to notify plaintiffs of this adverse action as required under § 1681m. Plaintiffs also allege that these actions reflect PMI's corporate policy to use information contained in consumer reports to determine insurance premiums and to charge higher premiums if information contained in the report is derogatory for any reason. Furthermore, plaintiffs allege that PMI has made a corporate decision to fail or refuse to provide adequate notice of adverse action to consumers. Specifically, in the first cause of action, plaintiffs assert that PMI willfully violated the FCRA by failing to notify consumers of "adverse action" based on consumer reports as required by § 1681m. In the third cause of action, plaintiffs assert defendant negligently violated FCRA in failing to notify consumers when it used a consumer report to charge higher premiums for mortgage insurance required by § 1681m. In the fifth cause of action, plaintiffs request a judicial declaration of the rights of the parties regarding PMI's obligation to provide adequate notice of adverse action as required by the FCRA. In the sixth cause of action, plaintiffs seek an order enjoining PMI from failing to provide notice of adverse action under the FCRA.

Second, plaintiffs allege that the transactions to acquire mortgage insurance were initiated by the lenders, not the consumers, and that consumers are not the insured parties on the mortgage insurance policies issued by PMI. In the second cause of action,[1] plaintiffs assert that PMI has no permissible purpose for using consumer report information for plaintiffs and for class members to set mortgage insurance premium rates pursuant to § 1681b. Furthermore, to the extent that PMI led the provider of the consumer report to believe that the report would be used for a transaction initiated by the consumer, or with the permission of the consumer, PMI obtained the report under false pretenses thereby willfully violating § 1681q. In the fourth cause of action,[2] plaintiffs allege that PMI failed to institute

---

[1] PMI does not move to dismiss the second cause of action.

[2] PMI does not move to dismiss the fourth cause of action.

3

reasonable procedures to ensure compliance with the FCRA and that PMI's conduct constitutes negligent violation of § 1681b and § 1681q. In the seventh cause of action, plaintiffs request a judicial declaration of the rights of the parties regarding PMI's alleged illegal use of plaintiffs' consumer report information. In the eighth cause of action, plaintiffs seek an order enjoining PMI from violating the rights of consumers by using their consumer report information without a permissible purpose.

Third, plaintiffs allege violations under California state law. Plaintiffs repeat their allegations that PMI uses consumer reports to set mortgage insurance premiums, that these reports are used in transactions not initiated by the consumer, and that the consumer is not the insured party under the mortgage insurance policies, and further that if PMI led the provider of the consumer reports to believe that the transactions were initiated by consumers or with the permission of the consumers, then PMI obtained the reports under false pretenses. Finally, plaintiffs allege that all of PMI's conduct occurred within the State of California. In the ninth cause of action,[3] plaintiffs assert that PMI has no permissible purpose for using the report information, violating Cal. Civ. Code § 1785.11. Plaintiffs further assert that the actions of PMI constitute willful noncompliance with the requirements of CCRAA, Cal. Civ. Code § 1785.19 and § 1785.31.

**DISCUSSION**

PMI argues that plaintiffs' claims fail to state a claim under the FCRA, and should be dismissed pursuant to Rule 12(b)(6). PMI asserts that an amendment to the FCRA has eliminated any private right of action for violations of section 1681m. PMI, therefore, argues that counts one, three, five, and six of the complaint which seek relief under § 1681m fail as a matter of law and must be dismissed. Furthermore, PMI asserts that counts five through eight, which seek injunctive and declaratory relief, fail because declaratory and injunctive relief are not available to private litigants under the FCRA. Finally, PMI argues that to the extent plaintiffs rely on state law for equitable relief, those

---

[3] PMI does not move to dismiss the ninth cause of action.

4

1 claims are preempted by the FCRA.

A. Legal Standard

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996).

Motions to dismiss for failure to state a claim are disfavored, see Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. See United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted).

B. Defendant's Motion

1. Claims for Failure to Notify of Adverse Action

PMI asserts that counts one, three, five, and six are barred as a matter of law, because the 2003 amendment to the FCRA eliminated any private right of action under § 1681m. In 2003, Congress amended the FCRA with the enactment of the Fair and Accurate Transactions Act ("FACTA"). Among other things, FACTA § 311 amended private enforcement rights available under the FCRA. Thus, while § 1681n and § 1681o of the FCRA generally establish a private right of action for certain violations of the FCRA, § 1681m(h)(8) (added by FACTA) now expressly provides that there is no private right of action for alleged violations of § 1681m:

(8) Enforcement

> (A) No civil actions. Sections 1681n and 1681o shall not apply to any failure by any person to comply with this section.
>
> (B) Administrative enforcement. This section shall be enforced exclusively under section 1681s by Federal agencies and officials identified in that section.

15 U.S.C. § 1681m(h)(8) ("Enforcement Language"). PMI asserts that every court to have considered the issue has held that the Enforcement Language, effective December 1, 2004, bars private actions under section 1681m. Plaintiffs do not dispute that the effect of the Enforcement Language is to bar private rights of action under § 1681m. Instead they argue that the FACTA amendment does not apply because defendant's conduct took place in September and October 2003, before the effective date of the amendment.

PMI acknowledges that the courts have split on the issue of whether the FACTA amendment bars a claim brought after the effective date of the amendment where, as here, the complaint alleges that defendant's conduct occurred prior to the amendment's effective date. PMI argues that dismissal of plaintiffs' § 1681m claims does not require retroactive application of the FACTA amendment for two reasons: a) there is no retroactive application because the relevant activity affected by FACTA is the filing of lawsuits under § 1681m, not the underlying compliance obligations under that section; and, b) even if applying the Enforcement Language to this action would be retroactive, it is not impermissibly retroactive under the Landgraf test. See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994).

In its first argument, PMI asserts that the court need not reach the Landgraf test, because PMI is not asking the court to apply the Enforcement Language retroactively. PMI argues that since plaintiffs brought suit *after* the effective date of the amendment, no retroactive application is required. PMI argues that the relevant activity to consider, when evaluating whether the Enforcement Language is retroactively applied, is the act of filing suit, rather than the conduct of the defendant. If the relevant conduct is the act of filing suit, then the Enforcement Language would be applied prospectively rather than retroactively.

6

PMI asserts that "[a] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711 (1974). According to PMI, since the Enforcement Language was the law in effect at the time plaintiffs filed suit, it eliminates the plaintiffs' private right of action. PMI cites Killingsworth v. Household Bank (SB) N.A., from the Northern District of Illinois, in which the court looked to the date of filing as the relevant act being regulated by the Enforcement Language. 2006 WL 250704 (N.D. Ill. Jan. 31, 2006). In that case, because the suit was filed after the effective date of the amendment, the court dismissed the section 1681m claims. Id. at *13.

PMI also cites Landgraf for the proposition that "a statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment." 511 U.S. at 269. In fact, PMI notes that the concurrence in Landgraf explains that the "critical issue" for application of the retroactivity analysis "is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates." Id. at 291 (Scalia, J., concurring). Thus, PMI argues that the "relevant activity" is the conduct that must precede the statute's effective date, which PMI asserts is the act of filing.

In its second argument, PMI asserts that even if the court were to agree with the plaintiffs that applying the Enforcement Language to this action would amount to retroactive application, such application would not be *impermissibly* retroactive under Landgraf. PMI relies on Southwest Center for Biological Diversity v. United States Department of Agriculture, 314 F.3d 1060 (9th Cir. 2002). In Southwest, the Ninth Circuit applied a law retroactively to eliminate the right of a plaintiff to access information under the Freedom of Information Act, and thus dismissed the plaintiff's case. Id. at 1061. The Ninth Circuit observed that the plaintiff had not relied upon existing law, and suffered prejudice when that law changed. Id. The plaintiff had merely requested and sued for information. PMI asserts that similarly in this case, there is no allegation that plaintiffs took any action in

reliance on the continued availability of a private right of action under the FCRA.  In fact, plaintiffs' first action was to file suit on September 23, 2005, *after* the Enforcement Language had already become effective.

Plaintiffs assert that the relevant activity for the court to consider is PMI's conduct in September and October 2003, which occurred before the Enforcement Language took effect.  Plaintiffs cite Fisher v. Finance America, LLC, holding that application of the FACTA amendment retroactively, to conduct that occurred before the amendment took effect, is improper.  SACV 05-0888 CJC (N.D. Cal. Jan. 23, 2006), Def. Request for Judicial Notice ("RJN"), Exh. 1, at 15.  Plaintiffs also argue that Scott v. Boos, 215 F.3d 940 (9th Cir. 2000), is more analogous to this case than Southwest.  In Scott, the court considered the congressional amendment to the civil RICO statute which provided that securities fraud could no longer serve as a predicate act for a civil RICO claim.  Scott, 215 F.3d at 941-42.  The Ninth Circuit held that "[i]t appears that the [Private Securities Litigation Reform Act of 1995] has retroactive effect because prior to the PSLRA a plaintiff had a RICO claim based on a defendant's alleged securities fraud, while afterwards a plaintiff does not."  Id. at 944-45.  The Scott court also found that "the date of the filing of the claim does not appear relevant."  Id. at 949.

The court finds that application of the Enforcement Language to this case would be impermissibly retroactive.  Consideration of whether a statute applies retroactively is controlled by Landgraf.  In Landgraf, the Supreme Court held that there is a presumption against the retroactive application of legislation.  Landgraf, 511 U.S. at 265.  When a case implicates a federal statute enacted after the events that gave rise to the suit, the district court must first examine the language of the statute to determine whether Congress has expressly provided the statute's proper reach.  Id. at 280.  If the statutory language expressly provides for either prospective or retroactive application, then the court is required to "give effect to the congressional will, subject only to constitutional restraints."  Id.  However, it the statute does not specify its temporal reach, the court must proceed to the second step, under which the court determines whether the new statute would have

8

1  any retroactive effect – that is, "whether it would impair rights a party had when he acted,
2  increase a party's liability for past conduct, or impose new duties with respect to
3  transactions already completed." Id.

4  Because the statute here does not specify whether it is retroactive, the court must
5  proceed to the second step of the analysis and determine whether FACTA would have any
6  retroactive effect.  In three recent decisions, district judges in the Central District of
7  California have applied Landgraf and determined that retroactive application of §
8  1681m(h)(8) has impermissible retroactive effects.  See Fisher, Def. RJN, Exh. 1; Phillips v.
9  New Century Fin. Corp., 2006 WL 517653 (C.D. Cal., Mar. 1, 2006); Parthiban v. GMAC
10 Mortgage Corp., Pl. RJN, Exh. C, SA CV 05-768 DOC (C.D. Cal. 2006).

11 As noted, PMI cites Killingsworth for its argument that the statute does not apply
12 retroactively because the relevant activity effected by the amendment is the act of filing
13 suit.  2006 WL 250704.  However, both Fisher and Parthiban, which the court finds are
14 more persuasive, explicitly reject this argument.  See Fisher, Def. RJN, Exh. 1, at 10
15 (relying on Scott, 215 F.3d at 949); Parthiban, Pl. RJN, Exh. C at 7.

16 In Parthiban, the plaintiff alleged that defendant obtained plaintiff's consumer report
17 without plaintiff's knowledge or consent, and then mailed plaintiff a written solicitation for a
18 home mortgage, which did not contain a firm offer of credit or provide, in a clear and
19 conspicuous manner, mandated consumer rights disclosures.  Id.  The defendant's
20 conduct – sending the allegedly illegal letter – occurred before the effective date of FACTA.
21 Pl. RJN, Exh. C, at 7.  However, the plaintiff did not file suit until after the amendment took
22 effect.  Id.

23 For purposes of analyzing retroactivity, the Parthiban court held that the focus
24 should be on the date the conduct at issue took place, not the date that the plaintiff brought
25 suit.  Id. (citing Hughes Aircraft Co. v. United States, 520 U.S. 939, 947 (1997)).  The court
26 reasoned that the fact that the plaintiff waited until after the amendment took effect to file
27 suit did not vitiate the illegality of the defendant's conduct.  Id.

28 Moreover, the Parthiban court held that the FACTA amendment did not bar plaintiff's

9

1  claim because to hold otherwise would have impermissible retroactive effect, where
2  defendant's conduct at issue occurred before the effective date of the amendment.  Pl.
3  RJN, Exh. C, at 7.  The court acknowledged the Seventh Circuit's decision in Murray v.
4  GMAC Mortgage Corp., 434 F.3d 948, 951 (7th Cir. 2006), holding that the amendment
5  does not apply retroactively to credit offers made before FACTA's effective date.  Pl. RJN,
6  Exh. C, at 5. The court, however, noted that the question was not settled in the Ninth
7  Circuit.

8       The Parthiban court followed the two-step analysis of Landgraf.  Id.  First, the court
9  found that the language of the amendment did not expressly prescribe its own temporal
10 reach, requiring the court to address the second prong of the Landgraf test.  Id. at 6.
11 Second, the court analyzed whether the amendment would have retroactive effect.  Id.
12 Relying on Scott, the court stated that under Ninth Circuit law, a statute eliminating a
13 private right of action under a given law has retroactive effect.  Id.  The court borrowed the
14 reasoning from Scott, because, similar to Scott, defendant's actions in Parthiban gave rise
15 to different legal consequences before and after the effective date of FACTA.  Id.  After
16 FACTA, defendants faced a significantly lesser chance of being held liable, since "an entire
17 class of plaintiffs" was eliminated by the amendment.  Id. (noting that after FACTA, group of
18 plaintiffs comprising "consumers who received illegal credit solicitations" could no longer
19 sue defendants privately).   According to the court, this was an impermissible retroactive
20 effect.  Id.

21      Finally, the Parthiban court rejected the defendant's argument that Southwest
22 governed the retroactivity issue.  Id.  First, the court noted that the facts of Parthiban were
23 more closely analogous to Scott than Southwest, since, like Scott, the case concerned the
24 elimination of a private right of action by statutory amendment.  Id.  The court
25 acknowledged that it was unclear whether the Ninth Circuit intended to add an additional
26 requirement to the retroactivity analysis by its holding in Southwest.  Id.   However, the
27 court noted that no court had ever cited Southwest for the proposition that there can be no
28 retroactive effect without proof that a plaintiff affirmatively acted in reliance on prior law.  Id.

10

Similarly, in Fisher, the district court held that the abrogation of a private right of action had an impermissible retroactive effect, because it impaired the rights plaintiff possessed at the time that the defendant failed to make the required disclosures, and attached new legal consequences to pre-enactment conduct. Specifically, the court found that before FACTA was passed, a consumer receiving an unsolicited credit solicitation could sue for failure to include a "clear and conspicuous" statement, whereas after FACTA, she could not. Fisher, Def. RJN, Exh. 1, at 7-9.

In reaching this conclusion, the court relied on Scott, discussed above. The Fisher court also relied on Hughes Aircraft, where the Supreme Court held that the enactment of an amendment to the False Claims Act ("FCA") had an impermissible retroactive effect because it eliminated a previously-available defense to qui tam suits, and significantly increased the likelihood that defendants would be held liable by expanding the universe of potential plaintiffs to include private persons "motivated by prospects of monetary reward rather than the public good." Fisher, Def. RJN, Exh. 1, at 8-9 (citing Hughes Aircraft, 520 U.S. at 949). The Court held that the change in the identity of the potential plaintiffs, and the consequent change in the incentive to sue, essentially created a new cause of action, not just an increased likelihood that an existing cause of action would be pursued. Hughes Aircraft, 520 U.S. at 950. Similarly, the Fisher court held that the change created by the FACTA amendment – removal of a profit incentive for suit by eliminating the private right of action – would affect the substantive rights of the parties by essentially eliminating an entire cause of action and subjecting defendants to a much decreased likelihood of liability. Fisher, Def. RJN, Exh. 1, at 9.

In Phillips, the court held that the FACTA amendment eliminating the private right of action did not bar plaintiff's claim, where before the Enforcement Language became effective, the defendant allegedly accessed the plaintiff's credit report and sent a solicitation that did not constitute a firm offer of credit. 2006 WL 517653 at *6. Plaintiff did not file suit until after the Enforcement Language took effect. Id. The court rejected the argument that the focus should be on the date plaintiff brought suit, rather than the date of the conduct at

11

1  issue. Id. (citing Hughes Aircraft, 520 U.S. at 947).

2  The Phillips court's reasoning was in line with the Parthiban and Fisher courts. Like both of those courts, in Phillips, the district court relied on the Ninth Circuit's decision in Scott, as opposed to that in Southwest. Similarly, the court also held that applying the FACTA amendment to eliminate the private right of action arising out of defendant's conduct that occurred before the amendment took effect would have impermissible retroactive effects under Landgraf and Scott. Id. at * 7.

Phillips and Parthiban are similar factually to the case here, and both courts relied on Scott rather than Southwest. Scott is also more analogous to the facts here, since Scott dealt with whether the elimination of a private right of action had impermissible effect, and in Southwest the Ninth Circuit applied a law retroactively to eliminate the right of a plaintiff to access information under the Freedom of Information Act. Here, as in Scott, PMI's actions give rise to different legal consequences before and after the effective date of FACTA. After FACTA, PMI faces a significantly lesser chance of being held liable, since an entire category of plaintiffs was eliminated by the amendment. Id. Under the reasoning of Scott, this is impermissible retroactive effect.

Furthermore, given the dearth of authority to the contrary, the court is simply not persuaded by PMI's argument that the Ninth Circuit intended in Southwest to add an third requirement to the long-established Landgraf test. Thus, defendant's motion to dismiss claims one, three, five, and six is DENIED, because retroactive application of FACTA to bar plaintiffs' claims would have impermissible effect.

2.  Claims for Declaratory and Injunctive Relief

Plaintiffs' claims for declaratory and injunctive relief under the FCRA are found in counts five through eight of the plaintiffs' AC. A claim for injunctive relief under state law may be included in count eight of plaintiffs' AC, though count eight does not expressly state whether plaintiffs are seeking relief under federal or state law.

a.  Availability of equitable relief to private litigants under FCRA

PMI argues that the claims for declaratory relief (fifth and seventh causes of

action) and the claims for injunctive relief (sixth and eighth causes of action) must be dismissed because declaratory and injunctive relief are not available as remedies to private litigants under the FCRA. Private rights of action to enforce alleged violations of the FCRA, to the extent they exist, are based solely on 15 U.S.C. § 1681n and § 1681o. PMI notes that § 1681n and § 1681o list only actual and statutory damages, punitive damages, and attorney's fees as possible remedies available to private litigants, and do not list either declaratory or injunctive relief. By contrast, where Congress intended to make declaratory or injunctive relief available under the FCRA, it did so explicitly. See 15 U.S.C. § 1681s(a)(1) and § 1681u(m).

PMI asserts that courts have almost unanimously found that equitable relief is unavailable to private litigants in FCRA suits. See Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005) ("the express inclusion of injunctive relief in certain provisions of the FCRA and its omission from the provisions creating plaintiff's cause of action to be a sufficiently 'clear command' from Congress that injunctive relief is not available to plaintiff"); White v. E-Loan, Inc., 409 F. Supp. 2d 1183, 1187 n. 6 (N.D. Cal. 2006) (granting judgment on the pleadings sua sponte on claims for injunctive and declaratory relief under the FCRA); Yeagley v. Wells Fargo & Co., 2006 WL 193257, at *2 (N.D. Cal. 2006) ("By limiting the remedies for private rights of action to damages and attorneys' fees Congress demonstrated that it did not intend for private litigants to obtain injunctive or declarative relief."). PMI further contends that since the Fifth Circuit's decision in Washington v. CSC Credit Services, Inc., 199 F.3d 263 (5th Cir. 2000), not a single district court has permitted a private litigant to recover injunctive relief under FCRA.

Plaintiffs assert that courts are split on the availability of injunctive and declaratory relief under consumer protection statutes. Furthermore, in the cases most often mentioned in an analysis of equitable relief under the FCRA – Washington and Howard v. Blue Ridge Bank, 371 F. Supp. at 1139 (which relies in large part on Washington) – the courts did not address their "independent authority" to award injunctive and declaratory relief under 28 U.S.C. § 2201 and § 2202. Plaintiffs contend that declaratory and injunctive relief are

13

consistent with the grant of enforcement authority to the FTC under § 1681s, disputing the finding in the Washington and Howard decisions that in enacting § 1681s(a) (enforcement by the Federal Trade Commission of requirements imposed under §§ 1681, et seq.), Congress intended to grant the FTC the exclusive right to seek injunctive relief. To the contrary, plaintiffs argue, § 1681s(a) is not a limitation on individual enforcement authority, but rather simply an expansion of the FTC's enforcement powers.

Plaintiffs also argue that declaratory and injunctive relief are consistent with the right of individuals to seek to enjoin the FBI under § 1681u. Plaintiffs claim that without the addition of this section, consumers could not sue the U.S. government, as the government enjoys immunity from suit. Plaintiffs contend, therefore, that the finding by the Washington and Howard courts – that Congress, by granting private litigants the authority to seek injunctive relief from the federal government, implicitly precluded such litigants from seeking injunctive relief elsewhere – is not persuasive. They argue that neither court addressed the fact that, without this grant of authority, private litigants would be foreclosed from suing the United States or any of its agencies for violations of the FCRA.

PMI responds that courts have rejected plaintiffs' argument that Congress expressly provided for the FTC's authority to seek injunctive relief under § 1681s(a), because Congress wanted to expand the FTC's enforcement powers. See White, 378 F. Supp. 2d at 424 ("The absence of any express provision for injunctive relief in Sections 1681n and 1681o [providing for suit by private plaintiffs], coupled with the express authorization of such relief on behalf of federal and state agencies, leads to the unmistakable conclusion that Congress intended to limit injunctive relief to those instances in which it expressly authorized it.").

PMI also argues that courts have rejected the argument regarding authorization for consumers to sue the government for improperly obtaining information under § 1681u:

> "Congress added an additional subsection, *see* 1681u(m), that expressly authorized injunctive relief in addition to the remedies at law permitted in subsection (i). By contrast Congress did not include any provision providing for equitable relief in either section 1681o or 1681n. The only way to give meaning to Congress's different treatment of these sections is to conclude

14

>that Congress intended to limit injunctive relief to state and federal agencies except where otherwise expressly provided."

Parthiban, Pl. RJN, Ex. C, at 9.

The court finds the Fifth Circuit's reasoning in Washington, as well as the decisions in Howard, Yeagley, and White, to be persuasive. See Washington, 199 F.3d at 268-70; Howard, 371 F. Supp. 2d at 1145; Yeagley, 2006 WL 193257 at *2; White, 378 F. Supp. 2d at 424. Moreover, the fact that Congress specifically enumerated the types of remedies available to consumers (in § 1681n and § 1681o), and did not include injunctive or declaratory relief, and the fact that Congress expressly authorized such relief on behalf of federal and state agencies, suggests that Congress intended to limit such equitable relief to those instances in which it expressly authorized it. Therefore, defendant's motion to dismiss the claims for injunctive and declaratory relief (counts five, six, seven, and eight) is GRANTED.

### b. FCRA preemption of state law claims

PMI, relying on Howard, where the court rejected plaintiffs' attempt to circumvent the FCRA's limitations by seeking injunctive relief under the CCRAA, argues that injunctive and declaratory relief is also unavailable under the CCRAA. See 371 F. Supp. 2d at 1146 ("[T]he provision of [the CCRAA] providing for injunctive relief is preempted by the FCRA."). PMI argues that allowing injunctive and declaratory relief under the CCRAA would subvert Congress' intent to limit equitable relief in this area to actions brought by the FTC. See Lin v. Universal Card Servs. Corp., 238 F. Supp. 2d 1147, 1152 (N.D. Cal. 2002) (finding preemption of the CCRAA where "Congress intended to have exclusive authority to enforce such claims through the Federal agencies and officials" that were identified in the corresponding section of the FCRA).

Plaintiffs respond that state-based requests for equitable relief are not preempted by the FCRA. First plaintiffs assert that Howard and Lin are not binding, and that a complete analysis of the FCRA and CCRAA reveals that injunctive relief is available to consumers. Furthermore, plaintiffs argue that the Lin holding is not applicable here, because the court

15

only held that the CCRAA § 1785.31 was inconsistent with FCRA § 1681s-2(d). Therefore, because the FCRA provision at issue in the immediate case is not the same provision that was at issue in Lin, plaintiffs maintain that the case before this court requires a different result.

Plaintiffs argue that Congress only intended that the FCRA preempt a state statute regulating subsections 1681b(c) or 1681b(e) of the FCRA. Section 1681t of the FCRA governs the relationship between the FCRA and state laws, including the issue of preemption. Section 1681t(b)(1)(A) states that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports." Plaintiffs argue that reference to subsections (c) and (e) implies the exclusion of subsection (a) – regulating permissible use of consumer report information – from the list of preempted provisions. See Dodd v. U.S., 545 U.S. 353, 356-57 (2005). Therefore, plaintiffs conclude that California's regulation of § 1681b(a) under CCRAA § 1785.31, providing injunctive relief, is not preempted.

PMI responds that plaintiffs argument that the FCRA does not preempt all claims under section 1681b(a) is irrelevant, because §1681b(a) regulates prescreened offers of credit, not injunctive relief. PMI argues that Congress intended to limit injunctive and declaratory relief regarding all fair credit reporting violations to actions brought by the FTC, whether or not they are related to section 1681b(a).

To the extent that claim eight seeks injunctive relief under the CCRAA, the court finds that PMI's motion to dismiss must be GRANTED. Lin, and four district court cases citing Lin, are instructive on the issue of state law preemption by the FCRA. See Lin, 238 F. Supp. 2d at 1151-53; Howard, 371 F. Supp. 2d at 1146; Gorman v. Wolpoff & Abramson, LLP, 370 F. Supp. 2d 1005, 1011 (N.D. Cal. 2005); Ornelas v. Fid. Nat'l Title Co. of Washington, Inc., 2005 WL 3359112, at *4 (W.D. Wash. 2005); Roybal v. Equifax, 405 F. Supp. 2d 1177, 1178-79 (E.D. Cal. 2005).

Lin involved a consumer action against a credit card issuer, alleging that it violated

16

California's CCRAA by inaccurately supplying consumer credit information about him to a credit reporting agency. 238 F. Supp. 2d at 1148. In response to the defendant's motion to dismiss, the court held that CCRAA provisions providing consumers with a private right of action to sue furnishers of consumer credit information were not excepted from preemption. Id. at 1152-53. The court noted that § 1681t makes it clear that Congress did not enact a blanket preemption of state law in the area of consumer credit reporting. Id. at 1151. Congress only intended to preempt state laws that are inconsistent with federal law. Id. Section 1681t(a) provides:

> Except as otherwise provided in subsection (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this title from complying with the laws of any States with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provisions of this title, and then only to the extent of the inconsistency.

The court determined that "[i]n enacting the provision regarding furnishers of consumer credit information, Congress found that the specific language contained in CCRA § 1785.25(a) is not inconsistent with its FCRA counterpart, § 1681s-2(a), and thus did not preempt the California provision." Id. at 1152 (citing 15 U.S.C. § 1681t(b)(1)(F)(ii). The Lin court, however, determined that FCRA § 1681s-2(d) did, on the other hand, preempt CCRAA §§ 1785.25(g) and 1785.31, which provide consumers with a private right of action under California law, because the California provisions "are inconsistent with the enforcement scheme of Congress . . . in matters relating to furnishers of consumer credit information." Id.

Howard, and three other cases, cite Lin and find that CCRAA § 1785.31 is preempted by the FCRA. Howard found that the plaintiff was not entitled to injunctive relief under the CCRAA, as the provision of that statute providing for injunctive relief was preempted by the FCRA. 371 F. Supp. 2d at 1146.

In Gorman, the court found that because the FCRA preempts CCRAA § 1785.25(g) and § 1785.31, the plaintiff had no private right of action to bring suit against furnishers of consumer credit information for a violation of CCRAA § 1785.25(a) (prohibiting furnishers of

consumer credit information from knowingly reporting inaccurate information).  370 F. Supp. 2d at 1011.

In Ornelas, defendants moved for summary judgment of plaintiff's claims under the Washington Consumer Protection Act on the basis that such claims were preempted by the FCRA.  2005 WL 3359112 at *4.  The court cited Lin for the proposition that "federal law preempts the area of private consumer action against furnishers of credit information."  Id. (quoting Lin, 238 F. Supp. 2d at 1153).

In Roybal, consumers who claimed that their credit report contained inaccurate information brought suit under federal and state law against credit reporting agencies and furnishers of credit information.  405 F. Supp. 2d at 1178-79.  In analyzing whether state law was preempted by the FCRA, the court found that no private right of action existed under CCRAA § 1785.25(a), since § 1785.25(g) and § 1785.31 were preempted by the FCRA.  Id. at 1182 n. 5 (citing Lin, 238 F. Supp. 2d at 1152).  Thus, in line with the holdings of Lin and Howard, this court also finds that CCRAA § 1785.31, which provides for injunctive relief, is preempted by the FCRA.

## CONCLUSION

In accordance with the foregoing, the court DENIES the motion to dismiss claims one, three, five, and six because applying FACTA would have an impermissible retroactive effect.  However, the court GRANTS the motion to dismiss claims five, six, seven and eight, WITH PREJUDICE, because declaratory and injunctive relief are not available to private litigants under FCRA.  Furthermore, because CCRAA § 1785.31 is preempted by the FCRA, any claim for injunctive relief under state law in count eight is also dismissed with prejudice.  The claims that survive PMI's motion to dismiss are one, two, three, four, and nine.

////
////
////

18

Additionally, the court declines to consider the supplemental authorities and arguments improperly filed by plaintiffs on May 5, 2006 under Local Rule 7-3(d).

**IT IS SO ORDERED.**

Dated: May 12, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge